IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMERISERV FINANCIAL BANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-1159 |
| | ) | |
| COMMERCEBANK, N.A., | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER ON MOTION FOR RECONSIDERATION

**I. PROCEDURAL BACKGROUND**

By its Memorandum Opinion and Order of March 26, 2009 (the "Memorandum Opinion"), this Court granted Plaintiff's Motion for Partial Summary Judgment under the Pennsylvania Uniform Fraudulent Transfer Act, 12 Pa.C.S.A. § 5104 *et seq.* ("PUFTA").

Plaintiff's Motion asserted that (a) Callahan and/or CCM dispursed $700,000 from its Ameriserv transaction to Commercebank with actual intent to defraud Ameriserv in violation of § 5104(a)(1) of the PUFTA and Plaintiff was therefore entitled to avoidance of the transfer or other appropriate relief under §5107; and (b) under the affirmative defense of § 5108,

Commercebank bore the burden of proving that it received the funds (i) in good faith and (ii) in exchange for reasonably equivalent value, and Commercebank could not meet its burden as to the first of these elements. The Court concurred. In particular, this Court concluded that "the fraudulent intent of Callahan's actions [was], particularly in the full context set forth in the factual history, self-evident." It further concluded that "no reasonable jury could find that Defendant met its burden of proof that it took in good faith within the affirmative defense of § 5108."

Presently before this Court is Defendant's Motion for Reconsideration asserting that the Memorandum Opinion (a) "impermissibly [found] facts based on disputed evidence and . . . in a manner which disfavor[ed] the non-moving party", and (b) failed to consider the principals of equity followed in In re Bayou Group, 396 B.R. 810 (Bankr. S.D.N.Y. 2008), on which the Court "heavily relied". Motion for Reconsideration at 1, 4. For the reasons set forth below, both assertions are without merit.

## II. ANALYSIS

### Summary Judgment Standard

The Court was cognizant of its duties under the summary judgment standards set forth in the Memorandum Opinion; and it carefully and expressly relied upon undisputed facts of record found in Defendant's Answer, the deposition testimonies of Defendant's representatives and legal

2

counsel, Defendant's Statement of Concise Facts, and the Exhibits.[1] The Memorandum Opinion provided the relevant citations to these record sources in Section II, <u>Factual Background</u>.

**Relevance of In Re Bayou Group**

The Court expressly looked to the law of this Circuit in reaching its determination. <u>See</u> Memorandum Opinion at 10-12 (discussing <u>In Re Burry</u>, 309 B.R.130 (Bankr. E.D. Pa. 2004) and <u>In re Bressman</u>, 327 F.3d 229 (3d Cir. 2003)). It further noted that "[t]he holdings in this Circuit comport with the generally-accepted analysis of a good faith defense under the related provisions of either the Bankruptcy Code or the Uniform Fraudulent Transfers Act ("UFTA")." Memorandum Opinion at 12 (citing to decisions of other jurisdictions, including <u>In re Bayou Group</u>, 396 B.R. 810 (Bankr. S.D.N.Y. 2008)).

As fully set forth in the Memorandum Opinion, the Court found (a) the South District of New York's summation of the federal courts' consensus on a "good faith" standard helpful, and

---

1. The Court observed, in reaching its conclusion, the following undisputed facts: "(1) a Callahan affiliate was in default on its financing with Commercebank; (2) such financing was known by Commercebank to have been fraudulently obtained through a purported Thermo Fisher transaction, and the matter was under federal criminal investigation; (3) Callahan and his affiliates had recently been sued in Texas by Commercebank; (4) Callahan pursued additional substantial financing from AmeriServ and obtained a commitment for funding related to a purported Home Depot transaction; (5) Callahan communicated the Ameriserv Commitment Letter to Commercebank within three days of the Texas filing; (6) Callahan represented to Commercebank that he would be making repayments when this funding was obtained and that this information should be kept confidential; (7) deposit from an entity known to Commercebank to be a fictitious name for Callahan's corporation CCM, recipient of the AmeriServ financing under the terms of the AmeriServ Commitment Letter, was made four days later; (8) Commercebank was concerned that AmeriServ was the source of these funds but made no inquiry to Callahan or AmeriServ; and (9) Commercebank acknowledged that the monies it received were proceeds of the AmeriServ transaction." Memorandum Opinion at 15-16.

3

(b) its legal analysis on this question both in accordance with cases in this Circuit and well-written.

That said, the source and nature of the assets at issue in that case were patently distinguishable from those *sub judice,* and the case cannot be read to support Defendant's strained assertion that AmeriServ's loan proceeds were "comingled" and/or that resolution of AmeriServ's claims for their recovery under PUFTA must await untangling of all Callahan's fraudulent actions and an equitable distribution amongst his victims.

To the contrary, in Bayou Group, some investors of a fraudulently operated hedge fund (the "fund") successfully redeemed their investments in the fund within a year prior to its collapse and bankruptcy. The Bankruptcy Court was considering whether individual investors who had successfully "cashed in" did so in good faith or whether those monies should be returned to the bankrupt fund and distributed, with the rest of the fund's remaining value/assets, to its investors equally. In contrast, as expressly discussed in the Memorandum Opinion, Defendant has acknowledged that the $700,000 transferred to it from a Callahan entity were proceeds from the AmeriServ loan.[2] That all Callahan's misdeeds have yet to be discovered and/or addressed does not mean that an identifiable/separable fraudulent transfer of one victim's funds to another, sued for under a legal standard met (*i.e.*, PUFTA, which provides remedy against the transferee in the absence of good faith), cannot or should not be adjudicated.

---

2. And, as Plaintiff observes, what became of the additional $170,000 transferred by AmeriServ that day has naught to do with this case. Defendant's assertion that because less than the full loan amount was transferred to Commercebank, "it is clear that the [loan] was co-mingled" is a *non sequitur*. Motion for Reconsideration at 3.

Callahan was, of course, not free to "rob Peter to pay Paul", and Commercebank is unentitled to retain those funds in the undisputed circumstances of this case.[3]

The total amounts loaned to Callahan and/or related entities by Plaintiff and Defendant, and the net amounts of their fraudulent losses, discussed in Defendant's Motion for Reconsideration at pp. 5-6, would be relevant to the parties' potential equitable recoveries from Callahan as, *e.g.*, any bankruptcy litigation proceeds. They are not, however, relevant to the question before this Court.

### III. ORDER

Accordingly, **IT IS HEREBY ORDERED** that the Defendant's Motion for Reconsideration is **DENIED**.

Lisa Pupo Lenihan
United States Magistrate Judge

Dated: April 17, 2009

---

3. Defendant's assertion that it "was able to recover some monies from Callahan's fraudulent scheme" entirely misses the core of this case. Motion for Reconsideration at 3. Defendant admits that the monies recovered were *Plaintiff's* and the question then, under PUFTA, is necessarily whether Defendant took those monies in good faith. Where that cannot reasonably be evidenced, Plaintiff is entitled to their return.